IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| CARRIE HOLMES-MCCLEAVE, | * | |
|---|---|---|
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-18-1431 |
| | * | |
| VALUE CITY FURNITURE,[1] | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant American Signature, Inc. moves this Court for summary judgment (the "Motion") (ECF No. 32). Defendant seeks a ruling from the Court that it did not discriminate against *pro se* Plaintiff Carrie Holmes-McCleave in violation of Title VII of the Civil Rights Act of 1964 or defame her relating to her termination. Plaintiff filed an opposition to Defendant's Motion (ECF No. 42), and Defendant replied and filed a Motion to Strike certain Plaintiff's exhibits attached to her response as improper summary judgment evidence (ECF No. 45).

After considering the Motion and responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds there are no genuine issues of material fact as to any of the claims. Accordingly, the Court will GRANT Defendant's Motion (ECF No. 32). The Court will also DENY Defendant's Motion to Strike certain Plaintiff's exhibits as moot (ECF No. 45).

---

[1] Defendant is incorrectly captioned in this case as "Value City Furniture." Its legal name is American Signature, Inc.

1

## FACTUAL BACKGROUND

Defendant American Signature, Inc. operates over one hundred retail furniture stores under the names "Value City Furniture" or "American Signature stores." ECF No. 32-1 at 5.[2] Defendant employs Home Furnishing Consultants ("HFCs") to assist customers selecting furniture pieces on the sales floor. *Id.* at 6. Defendant compensates HFCs with both an hourly wage and commissions on customer purchases. *Id.* at 7. To assure that customers are fairly allocated among the HFCs, Defendant uses what it calls the "Up System." *Id.* at 6. According to Defendant's HFC Training Guide, the "Up System" keeps track of the available HFCs and the order in which they are assigned customers. ECF No. 32-6 at 2. The "Up System" is rotational and has many procedures in place to assure that HFCs are receiving equal customer opportunities and that HFCs are properly prepared to assist customers. *See id.* at 2–3.

In addition to utilizing the "Up System" for HFCs, Defendant also has rules in place that prohibit HFCs from infringing on each other's sales opportunities. If an HFC is with a customer, another HFC is prohibited from interrupting the first HFC's consultation, which is known as "crashing" a sale. *Id.* at 5. Furthermore, Defendant has a procedure in place for situations in which multiple HFCs assist the same customer on different days. This scenario is referred to as a "split sale" and allows multiple HFCs to receive commissions for assisting the same customer. *Id.* at 7. Customers are identified by name, address, and phone number in Defendant's internal system so that HFCs can check whether a customer has a preexisting quote generated by another HFC. ECF No. 32-1 at 7. If the customer has an existing quote in the system, the two HFCs assisting the customer on separate occasions will split the sale if a customer ultimately makes a purchase, and

---

[2] The Court cites to the page numbers generated by the CM/ECF filing system.

both HFCs' names will go on the quote that later becomes a customer invoice. *Id.* When an HFC attempts to take full credit for a sale that should be a split sale, Defendant refers to this as "stealing" a sale and considers it a form of theft. *Id.* Defendant's Team Member Handbook, of which all HFCs receive a copy, states that theft is an offense for which an employee can be fired "without any prior Corrective Action taking place." ECF No. 32-4 at 4.

Defendant hired Plaintiff, an African American woman, as an HFC in May 2015 at its Value City Furniture location in White Marsh, Maryland. ECF No. 32-1 at 5; ECF No. 32-2 at 8, 11. During her time working for Defendant, Plaintiff alleges she was a "million dollar writer," which is "an HFC who sells at least a million dollars' worth of furniture annually." ECF No. 32-1 at 10 n.56. Million dollar writers are given special business cards denoting their status as well as a plaque in the employees' lunch room. ECF No. 32-2 at 42. Plaintiff received neither the special business cards nor the plaque. *Id.* at 42–43. When Plaintiff did receive her regular business cards, they listed her legal name, Carrie Holmes-McCleave, as opposed to her preferred name, Carrie Holmes. *Id.* at 45. Plaintiff's name on all employment-related documents listed her name as Carrie Holmes-McCleave for the entire duration of her employment with Defendant. *Id.* at 46–47.

On March 25, 2016, a customer visited the White Marsh Value City Furniture and specifically asked for an HFC named Chris. ECF No. 32-7 at 1. Instead of paging Chris to let him know a customer was asking for him, Plaintiff told the customer he was busy and that she could assist the customer. *Id.* Because she failed to abide by store policy by declining to alert HFC Chris to his customer, Plaintiff received a formal Corrective Action Report for attempting to "steal" a sale on March 30, 2016. *Id.*; 32-1 at 7.

In September 2017, Plaintiff was planning on purchasing some furniture from Defendant, and she was entitled to an employee discount. ECF No. 32-2 at 47. When Plaintiff took the

3

purchase slip to the managers' office, the manager who rang up her order did not initially apply the employee discount to the delivery fee. *Id.* When she went back to the office and alerted the manager to the mistake, the store manager Tony Bill instructed assistant manager Faydonia Millings (who seemingly processed the purchase slip initially) to apply the discount to the delivery fee. *Id.* Because Plaintiff had to ask the managers to apply the employee discount to which she was entitled, Plaintiff ultimately did not complete the purchase. *Id.* at 47–48.

On October 3, 2017, HFC Will Lewis served a customer named Kumar Karki and created a quote for approximately $10,000 of various furniture pieces. ECF No. 32-8 at 3–4. The next day, on October 4, 2017, Plaintiff created a separate quote in her name for Mr. Karki—using the same address and phone number—for the exact same furniture pieces listed on Mr. Lewis's quote. *Compare id.* at 1–2 (Plaintiff's quote listing the names and colors of the furniture pieces, as well as a total transaction charge of $10,720.20 after tax), *with id.* at 3–4 (Mr. Lewis's quote listing the names and colors of the furniture pieces, as well as a total transaction charge of $10,729.20 after tax). On October 6, 2017, an invoice was generated for Kalpana Karki (using the same address as Mr. Karki) listing Plaintiff as the sole salesperson for many of the same furniture pieces that appear on Plaintiff's and Mr. Lewis's prior quotes. *Id.* at 5–6. Plaintiff acknowledges that there was no ticket that contained both hers and Mr. Lewis's names. ECF No. 32-2 at 28. Plaintiff also acknowledges that a split sale would have been appropriate in this situation. *Id.* at 35 ("Q[:] . . . Then some form of split sale would have been appropriate?" "A[:] Yes, ma'am. It would have been appropriate.").

After the sale to the Karkis was complete, Anton Sanders, the store's sales manager, and Ms. Millings investigated the transaction. ECF No. 32-1 at 8. They determined that Plaintiff had been dishonest in creating a separate quote from Mr. Lewis's and that she had done so to retain

4

the full commission instead of splitting it with Mr. Lewis. *Id.* at 8–9. Mr. Sanders forwarded the investigation to Defendant's Director of Human Resources, Kristen Bell, who accepted Mr. Sanders' recommendation that Plaintiff be terminated. *Id.* at 9; ECF No. 32-3 at 2. Plaintiff was terminated on October 11, 2017. ECF No. 1 at 6.

At the time of her termination, Plaintiff reported to assistant manager Ms. Millings, an African American woman, sales manager Mr. Sanders, an African American man, and store manager Mr. Bill, a white man. ECF No. 32-1 at 6; ECF No. 32-2 at 9, 18. Plaintiff alleges that Ms. Millings would "target" her because of her gender, but also states she "was nasty to more than one person," including Plaintiff, of various races and genders. ECF No. 32-2 at 24–25. She similarly alleges that Mr. Sanders discriminated against her based on her gender, but she "do[es] not have any factual basis" to support this allegation other than her feeling. *Id.* at 22–23. Finally, she alleges that Mr. Bill treated her differently based on how she was dressed and whether she did or did not wear makeup. *Id.* at 4. Plaintiff was unaware that Ms. Bell was involved in the decision to terminate her. *See id.* at 9–10.

After her termination, on October 18, 2017, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination alleging race and sex discrimination. ECF No. 32-9 at 1. She received a Right to Sue letter from the EEOC on March 26, 2018. ECF No. 1-1 at 1.

### Procedural Background

On May 16, 2018, Plaintiff filed the Complaint *pro se* in this Court against Defendant. ECF No. 1. Defendant filed an Answer on January 29, 2019. ECF No. 7. From February through July

2019, there were various conferences and correspondence between the parties and the Court.[3] On

September 25, 2019, Defendant filed its Motion, seeking summary judgment against Plaintiff on

all claims. ECF No. 32. After filing a Motion for Extension of Time, ECF No. 38, which was

granted, Plaintiff filed a Response in Opposition on November 14, 2019, ECF No. 42. Defendant

filed a reply on December 2, 2019, accompanied by a Motion to Strike certain Plaintiff's exhibits

as containing improper summary judgment evidence. ECF No. 45.

This matter is now fully briefed, and the Court has reviewed Defendant's Motion and the

responses thereto. For the following reasons, the Court GRANTS Defendant's Motion (ECF No.

32). The Court also DENIES Defendant's Motion to Strike certain Plaintiff's exhibits as moot

(ECF No. 45).

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp.

v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual

dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of

material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of

---

[3] On February 13, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the
United States District Court for the District of Maryland and upon consent of all parties, this case
was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF
No. 20.

*material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir.

1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

## B. Defendant's Motion for Summary Judgment

In its Motion, Defendant seeks summary judgment on all claims. The Court will address each Count in turn.

### 1. Summary Judgment Is Appropriate as to the Title VII Claims.

Plaintiff alleges both racial and gender discrimination under Title VII. She alleges that Defendant terminated her employment based on her race and gender. Plaintiffs may prove discrimination through "two 'avenues of proof'": (1) direct or indirect evidence, or (2) the burden-shifting framework of *McDonnell Douglas*. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc)). "It is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by mean of the *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 n.4 (4th Cir. 2005)).

#### a. Plaintiff Is Unable to Establish Any Direct or Indirect Evidence Sufficient to Support a Finding of Discrimination.

The first method by which a plaintiff can attempt to prove discrimination is through direct or indirect evidence. A plaintiff seeking to use direct or indirect evidence to establish discrimination must present evidence that "both display[s] a 'discriminatory attitude' and bear[s] a causal relationship with the adverse employment action." *Ousley v. McDonald*, 648 F.App'x 346, 349 (4th Cir. 2016) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). "Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Warch*, 435 F.3d at 520 (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999)).

Here, Plaintiff is unable to point to any direct or indirect evidence or statements that tie either her race or gender to her termination in October 2017. While she does make allegations that Ms. Millings, Mr. Sanders, and Mr. Bill treated her unfairly on various occasions, she fails to show that any of these instances were actually related to either her race or gender. Additionally, she fails to show that any of these instances were related to her termination. Accordingly, Plaintiff has not established discrimination through either direct or indirect evidence.

> b. Plaintiff Cannot Establish Discrimination Under the *McDonnell Douglas* Burden-Shifting Framework.

The second method by which a plaintiff can attempt to prove discrimination is under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Under that framework, if Plaintiff states a *prima facie* case of retaliation, the burden shifts to Defendants to show that it had a legitimate, non-retaliatory reason for its contested action. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). If Defendant makes such a showing, the burden then shifts back to Plaintiff to show that the stated reason was pretextual and that retaliation was the "actual reason" for the contested action. *See Foster*, 787 F.3d at 253–54.

A plaintiff can establish a *prima facie* case of discrimination by showing that: "(1) she is a member of a protected class; (2) she 'suffered an adverse employment action'; (3) her job performance was satisfactory; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F.App'x 745, 747 (4th Cir. 2017) (quoting *Adams v. Tr. of Univ .of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). Plaintiff can establish the fourth element by showing "similarly-situated employees outside the protected class received more favorable treatment," *id.* (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), or "the position

remained open or was filled by similarly qualified applicants outside the protected class," *Holland*, 487 F.3d at 214 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

Here, Plaintiff, an African American woman, is unquestionably a member of a protected class. Plaintiff also unquestionably suffered an adverse employment action because she was terminated. Plaintiff, however, runs into difficulty establishing the other elements. Although Plaintiff's employment with Defendant was "generally uneventful," ECF No. 32-1 at 7, Plaintiff's employment record contained at least one other store policy violation other than the incident preceding her termination, calling her job performance into question. *See* ECF No. 32-7. More importantly, the evidence indicates that Plaintiff did, in fact, "steal" the sale she was accused of stealing. *Compare* ECF No. 32-8 at 1–2 (the invoice for Mr. Karki generated by Plaintiff), *with* ECF No. 32-8 at 3–4 (the invoice for Mr. Karki generated by Mr. Lewis). It is clear from Defendant's Team Member Handbook that "theft (actual or attempted) or dishonesty" are instances for which an employee may be fired immediately. ECF No. 32-4 at 4. Plaintiff herself admitted during deposition that stealing sales is a form of theft:

> [Questioner]. Okay. And they call it stealing sales, I guess, because it is a form of theft. You're taking income that someone else has earned and putting it in your own pocket instead of theirs; correct?
> [Plaintiff].     Yeah, I guess you could say that. I mean, there's a commission involved, you know.

ECF No. 32-2 at 38. Not only does this call into question Plaintiff's job performance, it also counteracts the assertion that Plaintiff's termination arose under circumstances giving rise to an inference of discrimination. *See Swaso*, 698 F.App'x at 747. Accordingly, Plaintiff has failed to sufficiently establish elements three and four of a *prima facie* case of discrimination under *McDonnell Douglas*.

Even if Plaintiff had been able to make a *prima facie* case of discrimination, the burden would then shift to Defendant to establish it had a legitimate, non-retaliatory reason for Plaintiff's termination. Defendant's reason that it terminated Plaintiff because she stole a sale from another HFC is both legitimate and non-retaliatory. Because Defendant meets their burden under the *McDonnell Douglas* test, the burden shifts back to Plaintiff to establish that Defendant's reason was pretextual. Plaintiff, however, has not pointed to a single instance in which her race or gender was targeted or even mentioned by her supervisors, or anyone else employed by Defendant. Accordingly, Plaintiff fails to meet her burden under the *McDonnell Douglas* analysis. The Court, therefore GRANTS Defendant's Motion as it pertains to Plaintiff's Title VII claims.

### 2. *Summary Judgment Is Appropriate as to the Defamation Claim.*

Plaintiff also alleges common law defamation. She alleges that Defendants defamed her character in the sales industry. Defendants argue that Plaintiff cannot meet any of the elements to establish defamation under Maryland law. The Court agrees with Defendants.

In Maryland, to establish a *prima facie* case of defamation, a plaintiff must show: "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F.Supp.3d 355, 365 (D.Md. 2017) (citing *Gohari v. Darvish*, 363 Md. 42, 54 (2001)). A defamatory statement is "one 'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Id.* (quoting *Gohari*, 363 Md. at 54). A statement is "false" if it is "not substantially correct." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). For a defendant to be legally at fault, a plaintiff must demonstrate at least that the party making the false statement was negligent in

doing so. *Doe*, 274 F.Supp. at 366 (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 120 (1983)). Finally, for a plaintiff to establish they suffered harm, actual harm generally must be established. *Id.* (citing *Hearst Corp.*, 297 Md. at 130).

Here, Plaintiff based her claim of defamation on the premise that Defendant said she "stole sales" while its employee. ECF No. 32-2 at 39. As Plaintiff testified at her deposition, however, she is not aware of any statements Defendant has made to anyone else regarding allegations of Plaintiff stealing. *Id.* at 39–40. In fact, the only statement Plaintiff could identify in which Defendant mentioned Plaintiff at all was in the Answer to Plaintiff's Complaint. *Id.* at 40–41. In Maryland, there is an absolute privilege for allegedly "defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case." *Leading Tech. Composites, Inc. v. MV2, LLC*, CCB-19-1256, 2019 WL 4962312, at *2 (D.Md. Oct. 8, 2019) (quoting *Di Blasio v. Kolodner*, 233 Md. 512, 522 (1964)). Statements contained in pleadings—such as in Defendant's Answer—"cannot serve as the basis for an action for defamation." *Holt v. Camus*, 128 F.Supp.2d 812, 815 (D.Md. 1999) (citing *Gill v. Ripley*, 352 Md. 754, 761–62 (1999)). Accordingly, Plaintiff does not meet the first element to establish a *prima facie* case of defamation, and Defendant is entitled to summary judgment on this matter. The Court, therefore, GRANTS Defendant's Motion as it pertains to Plaintiff's defamation claim.

### C. Defendant's Motion to Strike

Defendant's Reply to Plaintiff's Response in Opposition (ECF No. 45) also contained within it a Motion to Strike certain Plaintiff's exhibits. Defendant points to Plaintiff's Exhibits 1A, 1B, 1C, 3A, 3B, 3C, 7A, and 8—all filed as part of Plaintiff's Response in Opposition (ECF No. 42)—as either unauthenticated, hearsay, and/or irrelevant. ECF No. 45-1 at 2. Even the broadest, most favorable reading of these exhibits, however, do not sufficiently support Plaintiff's claims of

discrimination or defamation. Because Defendant would prevail on its summary judgment motion with or without the Court considering Plaintiff's questioned exhibits, the Court will DENY Defendant's Motion to Strike as moot.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that, in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could find in Plaintiff's favor on her discrimination or defamation claims. Therefore, Defendant's Motion (ECF No. 32) is GRANTED. Defendant's Motion to Strike (ECF No. 45) is DENIED as moot. A separate order will follow.

Date: 3 January 2020

A. David Copperthite
United States Magistrate Judge